Morris L. Groder v. Commissioner.
Groder v. Commissioner
Docket Nos. 67249, 69537, 69538.
United States Tax Court
T.C. Memo 1960-208; 1960 Tax Ct. Memo LEXIS 85; 19 T.C.M. (CCH) 1142; T.C.M. (RIA) 60208; September 30, 1960
Morris L. Groder, pro se, 304 West 78th Street, New York, N. Y. Edward H. Hance, Esq., and Colin C. Macdonald, Esq., for the respondent. SCOTT Memorandum Findings of Fact and Opinion
*86 SCOTT, Judge: The respondent determined deficiencies in petitioner's income tax in the amounts of $286.90, $635.56, and $538.89, for the years 1952, 1953, and 1954, respectively. The deficiencies result from the disallowance by respondent of deductions claimed by petitioner as business expenses in the amounts of $1,177.84 for the year 1952, $2,917.61 for the year 1953, and $2,349.56 for the year 1954, and the amount of $117.95 claimed by petitioner as an educational expense in 1952. The cases were consolidated for trial and opinion. The issues for decision are whether petitioner is entitled to deductions in the amounts claimed, or any part thereof, as ordinary and necessary expenses in carrying on a trade or business as a consultant, author, or inventor during the years 1952 through 1954 and whether petitioner is entitled to the deduction claimed for educational expense in 1952 from gross income in arriving at adjusted gross income. Findings of Fact Petitioner presently resides at 220 Berkeley Place, Brooklyn 17, New York. For the calendar years 1952 and 1953 petitioner filed joint income tax returns with his wife Dorothy R. Groder, the 1952 return being filed with the district *87 director of internal revenue for the Upper Manhattan District of New York, and the 1953 return with the district director of internal revenue for the Lower Manhattan District of New York. For the calendar year 1954 petitioner filed an individual income tax return with the district director of internal revenue for the Upper Manhattan District of New York. For the first 8 months of 1952 petitioner was employed on a full-time basis as an engineer by the United States Navy Department in Washington, D.C., and from September of 1952 throughout the years here in issue was employed by the Electrical and Physical Instrument Corporation of New York in New York City first as an engineer and later as a plant manager. Petitioner worked as an employee of the Electrical and Physical Instrument Corporation as much as 70 hours some weeks and less than 40 hours other weeks but averaged at least 40 hours a week. Petitioner graduated from engineering school in 1947 and holds a District of Columbia certificate as a professional engineer. During 1951 and 1952 he took courses in Management Engineering, Advanced Management, and Statistics at George Washington University, Washington, D.C., and in 1954-1955 took *88 business courses at the Alexander Hamilton Institute in New York City. He is a member of the Institute of Radio Engineers, Institute of Aeronautical Sciences, Audio Engineering Society and Society of American Military Engineers. Petitioner, in 1938, published an article in Radio-Craft, entitled "An Electronic Organ for $20." In July 1950, he published an article in Civil Engineering entitled "Linear-Scale Slide Rules Provide Uniform Accuracy." Petitioner, in September 1953 and October 1953, read technical papers prepared by him before the Audio Engineering Society. During the year 1943 while waiting to enroll in an educational program as a disabled veteran, petitioner worked out a method of making a small slide rule which could be manufactured very cheaply. It was his idea that this item might be used by businesses as a "give-away." At some later time petitioner discussed with a patent attorney the possibility of patenting his slide rule. The patent attorney discouraged his attempting to patent his slide rule and advised him instead to write a book about it. Petitioner, in 1952, completed his book about the slide rule. His mother and sister organized the G and G Corporation in 1952 *89 to publish petitioner's books, and specifically the book on the slide rule under the title "Linear Scale Non-Logarithmic Slide Rules." At the time petitioner completed his book on the slide rule, he was working for the Federal Government and he thought that he should not publish his book himself. At the time the G and G Corporation was organized petitioner hoped to receive profits from the publication of his slide rule book by the corporation and also hoped to write other books for the corporation to publish. In 1952 petitioner borrowed $600 which he lent to the G and G Corporation. Petitioner's mother and sister each put some money into the G and G Corporation. The G and G Corporation had 500 copies of petitioner's slide rule book printed. The Corporation sold about 400 copies during the years 1952 and 1953. The G and G Corporation repaid petitioner $100 of the $600 which petitioner had lent to it. This corporation dissolved at the end of 1953 or the early part of 1954 and transferred to petitioner the 100 copies of the book which remained unsold. Petitioner in his 1953 return claimed a deduction of $500.04 for a business bad debt because of the portion of his loan to the G and G *90 Corporation which remained unpaid. In his 1954 return petitioner reported $83.74 as receipts from business or profession as an author. The amount of $83.74 was received by petitioner from the sale of some of the slide rule books turned over to him by the G and G Corporation. For the year 1952 petitioner on his income tax return reported income of $100 from the business or profession of "Technical Consultant" and claimed the following deductions: Material and supplies
$ 45.23
Other costs
228.82
Rent on business property
285.00
Taxes on business property
20.00 [1]
Losses of business property
335.00
Depreciation and obsolescence
47.20
Other business expenses
316.59 [2]
Petitioner in 1952 spent approximately $370 on various items such as a small hair dryer, vacuum tubes, and other equipment which he *91 used in an effort to develop a thermo paint remover. A man named Erickson, who was a professional painter, had employed petitioner as a technical consultant, and became interested in petitioner's work on the thermo paint remover to be used instead of a blow torch in removing paint. Petitioner expected to be reimbursed by Erickson for his expenses in work on the thermo paint remover and thought Erickson was interested in having him run a factory which was to be built to manufacture the thermo paint remover. Petitioner continued during 1953 and 1954 to work on the thermo paint remover. In 1953 he spent approximately $245 for items similar to those purchased in 1952 for use in his work on the thermo paint remover. In 1953 petitioner purchased a camera and related equipment for $190.07 which was intended for use in connection with his work on the thermo paint remover. This camera was listed on the sales slip as a polaroid camera. Some of the items included in the $245 were flash bulbs and a polaroid meter and other items purchased from a camera shop. In 1954 petitioner purchased a strobelite for $150.16 to be used with his camera. Other amounts which petitioner spent in 1954 in connection *92 with the thermo paint remover project are not specifically identified. At some undisclosed time the thermo paint remover project terminated unfavorably. Erickson had attempted unsuccessfully to patent the thermo paint remover and spent so much money on it and had become so discouraged that he dropped the whole thing. The amount of $335 claimed by petitioner in 1952 as losses on business property is explained in his income tax return as follows: Breakage of business equipment when moving to New York
$ 35.00
Business fixtures abandoned when moving to New York
300.00
In 1952 petitioner paid a total amount of $1,152 for rent for the apartments in which he lived. Petitioner in 1952 spent $67.39 for books. These books were used by him in connection with his employment by the United States Navy Department and the Electrical and Physical Instrument Corporation as well as for study to aid him in developing projects and in writing. Petitioner claimed depreciation of $13.72 in his 1952 return on technical books purchased in 1951 and $13.48 on technical books purchased in 1952 assigning a 5-year useful life in each instance. In 1952 petitioner paid dues in the total amount *93 of $56 to the professional societies of which he was a member and paid a total amount of $24 for subscriptions to professional journals. For the year 1953 petitioner reported no income as a technical consultant, inventor, or author. He claimed as expenses of a business or profession under each of these designations the following amounts: TECHNICAL CONSULTANT
Material and supplies
$ 79.25
Rent on business property
402.00
Depreciation and obsolescence
311.33
Taxes on business and business
property
30.00 [3]
Other expenses
436.64
TOTAL
$1,259.22
INVENTOR-SLIDE RULE
Material and supplies
$ 93.00
Other costs
125.00
Taxes on business and business property
2.00
Other business expenses
100.00
TOTAL
$ 320.00
AUTHOR
Material and supplies
$ 69.10
Interest on business indebtedness
53.60
Taxes on business and business property
30.00
Bad debts arising from sales or services
500.04
Other business expenses
535.65
TOTAL
$1,188.39
In addition, expenses of $150 were claimed on the joint return from the business or profession of author by Dorothy R. Groder. The amount of $311.33 claimed as depreciation *94 or obsolescence was explained on petitioner's return as follows: Cost or
Deprecia-
Date
other
tion
Kind of property
Acquired
basis
Allowed
Technical books
1951
$ 68.61
$27.44
Technical books
1952
67.39
13.48
Office furniture
1951
200.00
40.00
Oscilloscope camera
1953
217.00
0
Life
Esti-
used in
mated
accumu-
Life
lating
from be-
Depreciation
Remaining
depre-
ginning
allowable
Kind of property
Cost
ciation
of year
this year
Technical books
$41.17
3
1
$ 41.17 *
Technical books
55.91
2
1
55.91 *
Office furniture
160.00
3
1
160.00 *
Oscilloscope camera
217.00
0
4
54.25
*95 The amount of $125 claimed by petitioner in his 1953 return as "other costs" was explained as representing a payment to C.A. Snow, a patent attorney. During the year 1952 petitioner paid $120 to C. A. Snow and Company of Washington, D.C. On November 24, 1952, C. A. Snow and Company filed a patent application in petitioner's name covering a claimed invention of a slide rule which application was assigned serial number 322,318. Petitioner received a letter from C. A. Snow and Company dated November 24, 1953, stating that there was enclosed a copy of "the Office Action by the Examiner" dated July 9, 1953, copies of certain patents and photostatic prints of the drawings of French patents. Petitioner received a letter dated December 22, 1953, from C. A. Snow and Company reading as follows: "We have reviewed the record in the matter of the Slide Rule Application filed by you. "We find that the total fees for the filing and prosecution of the patent application to an issue, amount to $205.00. Since you have decided that you do not care to prosecute the application, the file in this case will be closed and we will consider the fees as completed with the exception of the prosecution fee *96 amounting to $85.00 of the balance due." Petitioner in 1953 "started with someone * * * for the purpose of * * * selling slide rules" and he expects to make a profit in 1960 from sales of slide rules. During the year 1953 petitioner paid a total amount of $2,033.40 as rent on the apartment in which he lived. During 1953 petitioner spent $155.46 on books which he used in connection with his employment and work on the thermo paint remover as well as for other purposes, $41 on subscriptions to technical journals, and $61.65 as dues to technical societies in which he maintained membership. Petitioner on his individual income tax return for 1954 claimed the following expenses from the business or profession as indicated: AUTHOR
Material and supplies
$503.27
INVENTOR - SLIDE RULE
Material and supplies
$146.50
ENGINEER, INVENTOR, AUTHOR
Material and supplies
$ 20.00
Rent on business property
423.20
Interest on business indebtedness
52.12
Taxes on business and business property
35.00 [4]
Losses of business property
400.00
Depreciation and obsolescence
134.16
Other business expenses
513.47
His income *97 tax returns contained the following explanation of the deduction claimed for "Material and supplies" in the business or profession of author - "Includes expenses of one book which required 10 years research." The $503.27 represents petitioner's estimate of the amount he expended over a 10-year period in keeping cats and for materials in connection with the writing of a book entitled "Tricks and Training for Cats." Petitioner did not estimate how much, if any, of the $503.27 was spent in the year 1954 or in any particular prior year. Petitioner completed the manuscript of the book on tricks and training for cats in 1954. In 1959 the book was accepted by a publishing firm for publication and petitioner received an advance royalty thereon in that year of $100. In 1954 petitioner paid $1,269.60 as rent for the apartment in which he lived. The apartment in which petitioner lived in 1954 consisted of a living room, bedroom, kitchen, bath, and another room in which petitioner stored electronic parts, about 2,000 technical books, and electronic equipment. In this room he kept a work desk, chair for use at the desk and file cabinets which held technical data that he had extracted from magazines. *98 Petitioner also kept his cats in this room. Petitioner used the books he kept in this room in connection with his employment by the Electrical and Physical Instrument Corporation and also in other connections. In 1954 he spent $260.48 for books, $68.37 for subscriptions to technical journals, and $61 as membership dues to technical societies. In 1954 petitioner claimed as business expense deductions $205.60 for unreimbursed expenses as an employee of Electrical and Physical Instrument Corporation, consisting of $95 as unreimbursed travel expenses, $25.60 for Christmas gifts to employees, and $85 as a tuition payment to Alexander Hamilton Institute. No proof was made as to the expenditure of any of these amounts except the $85 tuition fee. In 1952 petitioner paid tuition fees of $117.95 for courses he took at George Washington University and textbooks used in connection with these courses, and in 1954 petitioner paid tuition of $85 for courses he took at Alexander Hamilton Institute. Petitioner took the courses at George Washington University to improve his abilities to discharge the duties of his position as an engineer employed by the United States Navy Department. He took the *99 courses at Alexander Hamilton Institute at the suggestion of his superior in the Electrical and Physical Instrument Corporation. Petitioner in a personal resume covering years from 1938 through part of 1960 lists as his inventions the following: Binaural linguistic systems; binary-decimal encoders; special slide rules; electronic musical instruments; multifrequency oscillating systems; and mathematical computing devices. In 1948 petitioner had a printed card with a Brooklyn, New York address giving his name followed by the word "Electronics." In 1948 and 1949 petitioner had a printed card with a Washington, D.C. address giving his name followed by the words "Electronics Consultant." In 1955 through 1960 petitioner had printed cards with his name, the earlier with a Brooklyn, New York address and the latter with a New York City address showing "P.E." after his name which indicated Professional Engineer. From 1938 through the first half of 1960 petitioner received the following amounts of money from the sources indicated: 1938
$30 for writing a technical article on electronic musical instruments
1952
$100 for a consulting fee
1954
$83.74 from sales of copies of his book on the slide rule
1955
$400 and $3,010.50 as consulting fees and $23.34 from book sales
1956
$1,205.87 as consulting fees and $15.68 from book sales
1958
$2.98 from book sales
1959
$300 as a private consultant, $150 as a consultant to New York
University, and $100 advance royalty on book, "Tricks and Training for
Cats"
*100 Petitioner on his joint income tax returns for each of the years 1952 and 1953 and on his individual return for 1954 after deducting the amounts claimed by him as business expenses and the $117.95 claimed as educational expense in 1952, computed his income tax by use of the standard deductions provided for in section 23(aa) of the 1939 Code and section 141 of the 1954 Code. Respondent in his notice of deficiency disallowed the amounts claimed by petitioner as business expenses and the $117.95 claimed as educational expense in 1952 and computed petitioner's income tax by use of the standard deduction. Petitioner has failed to prove that he was engaged in any business or profession other than as an employee in 1952, 1953, and 1954. Petitioner has not shown that any of the amounts claimed by him as business expenses in 1952, 1953, and 1954 would constitute ordinary and necessary expenses of any activities as a consultant in which he might have engaged in 1952, or any activities in which he might have engaged in 1953 and 1954 as a consultant, inventor, or author. Any amounts which petitioner would be entitled to deduct as educational expenses or as business expenses of an employee *101 are not deductible from gross income in arriving at adjusted gross income. Opinion For a claimed deduction of a business expense to be allowable under section 23(a) of the 1939 Code and section 162(a) of the 1954 Code, it must be an ordinary and necessary expense, paid or incurred within the taxable year in carrying on a trade or business. . The burden is, of course, upon the taxpayer to establish each of these three factors. , affd. per curiam (C.A. 5, 1959). Petitioner was employed as a regular fulltime employee at all times during the years here involved either by the United States Navy Department or by Electrical and Physical Instrument Corporation. But, with the minor exceptions hereinafter discussed, it is not in his trade or business as an employee that he claims the deductions for business expenses. The evidence presented by petitioner as to any trade or business (including profession) other than that of employee in which he might have been engaged in the taxable years here involved is so vague and inconclusive as to be totally unsatisfactory. *102 Petitioner made no explanation of the work he did as a consultant. The only year here involved in which he reported any income from such occupation was 1952 in which year he reported that he received a $100 consulting fee. The evidence is not even clear as to from whom or for what he received this fee. At one point in his testimony petitioner implied that this fee was paid to him by Erickson in connection with work on a project attempting to develop a thermo paint remover. There is no further clarification of the nature of any consulting work that petitioner did in any of the years here involved. Petitioner completed the manuscript of a book entitled "Linear Scale Non-Logarithmic Slide Rules" sometime in 1952. All that the record shows as to the time in 1952 when work on this book was completed is that it was while petitioner was employed by the United States Navy Department which places the time between January and September of 1952. However, petitioner has made no claim that he was engaged in the trade or business of an author in 1952. In that year the only business in which he claims to be engaged other than his salaried employment is as a consultant. Petitioner claims to have *103 engaged in trade or business as a consultant, inventor and author in 1953 and 1954. Petitioner has not described any work which he did in any of these claimed businesses in 1953 and 1954, except to say that he completed the manuscript on a book "Tricks and Training for Cats" in 1954 which he had been working on over a 10-year period. What work, if any, petitioner did on this book in 1953 the record does not show nor does it show what work he did in 1954 to complete the manuscript. The evidence totally fails to substantiate petitioner's claim that he was engaged in any trade or business other than as a salaried employee during any of the years 1952, 1953, and 1954. Neither the fact that in some years subsequent to 1955 petitioner received consulting fees and an advance royalty from a publishing house in connection with his book "Tricks and Training for Cats," nor the fact that petitioner had printed in years prior and subsequent to those here involved cards that he could have used as business cards is helpful in resolving the question of whether petitioner was engaged in a trade or business other than as a salaried employee in the years 1952 through 1954. Petitioner has also failed *104 to show that the deductions claimed would properly constitute ordinary and necessary business expenses paid or incurred in the taxable years here involved in any trade or business except that to the extent hereinafter noted some of the claimed expenses might relate to his business as an employee. Petitioner has failed to show payment at any time of many of the items claimed as deductions. In some instances payment is shown to have been made in a year other than the one in which the deduction is claimed. It has long been settled that except in extraordinary situations a taxpayer on the cash basis can only deduct as business expenses amounts actually paid in the taxable year in which the deduction is claimed. (C.A. 9, 1940), affirming a Memorandum Opinion of this Court. Petitioner did show payment for certain items which he testified were used in his work on the thermo paint remover. When work on the thermo paint remover project began and when it terminated unsuccessfully is not shown. Petitioner stated that he thought Erickson had agreed to reimburse him for his expenses in connection with his work on the thermo paint *105 remover project. When expenditures are made by a taxpayer under an agreement that he will be reimbursed therefor, such expenditures are in the nature of advances and are not deductible as business expenses. , affd. (C.A. 2, 1932). Petitioner has made no showing of the useful life of items for which he claimed depreciation or obsolescence, in many instances has not shown the cost of such items, and has in no instance definitely shown the use made of such items in the claimed business in connection with which the deduction was taken. In connection with the deduction claimed for rental of business property, the amounts represent a portion of the rent on the apartments in which petitioner lived. As to the years 1952 and 1953, no evidence is shown as to what portions, if any, of the apartments petitioner then occupied were used for any claimed business purpose and the explanation given for 1954 as shown in our findings is insufficient to support the allocation of any portion of rent to any business to which petitioner claims it relates. Petitioner has not shown the nature of the books he *106 purchased in each year or to what extent those books specifically related to any of his activities. He has not shown to what extent those books might have been used by him in his business as an employee and to what extent for his general improvement and enjoyment. Petitioner has not shown that he ever made any attempt to collect his loan to the G and G Corporation or when, if ever, it became worthless. He has not shown what assets or liabilities the corporation had at the time it was dissolved. He has not shown any abandonment of the patent application on the slide rule. Petitioner has shown certain expenditures as set forth in our findings for membership dues to technical societies, subscriptions to technical journals, and education to further his abilities in the position in which he was employed at a salary. Except for the tuition fees paid in 1952 and 1954, petitioner has not claimed these amounts as business expenses as an employee. The petitioner has shown that he paid some amounts as sales tax which he estimated at $20, $30, and $35 in the years 1952, 1953, and 1954, respectively. The record also shows an interest payment of $52.12 in 1952 for which petitioner claimed a *107 deduction in 1954. In any event the total of the items which would properly be deductible as expenses of an employee and under other sections of the Code is in no year more than the standard deduction under sections 23(aa) of the 1939 Code and 141 of the 1954 Code, which respondent has allowed to petitioner in computing the deficiencies. Under section 22(n) of the 1939 Code and section 62 of the 1954 Code, amounts paid as business expenses of the type here shown by an employee may not be deducted from gross income in arriving at adjusted gross income. These deductions, as are deductions for taxes and interest paid other than in a trade or business, are allowable only to the taxpayer who itemizes his deductions. Decision will be entered for respondent. Footnotes
1. This represents petitioner's estimate of sales tax paid on items purchased by him which he claimed were used in his business. ↩
2. This amount is composed of the following items: ↩
Technical journal subscriptions
$ 47.00
Tools
45.00
Office equipment
33.27
Stamps, stationery, and checks
20.00
Expendable electrical equipment
171.32
3. See footnote 1 on page 5 [1144].↩
*. Technical books and office furniture depreciated in value to zero primarily due to abandonment necessitated by moving to a smaller apartment. Two other rooms of furniture (non-business) were abandoned (not deducted). Moving was accomplished for the purpose of increasing income. Mrs. Groder obtained a position as Nurse Supervisor which necessitated a residence close to her place of employment. Losses sustained for losing the two rooms of furniture, moving expenses, and cancelling of lease amounted to $2,200. This loss was not included in the return since it was not known if the deduction was permissible.↩
4. See footnote 1 on page 5 [1144].↩